**SO ORDERED.**

**SIGNED this 17 day of July, 2007.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**
_____

NOT DESIGNATED FOR PUBLICATION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JANEE M. PHILLIPS, a/k/a JANEE M. COMLEY, | ) | Case No. 05-19790 |
| | ) | **Chapter 7** |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| CONWAY BANK, N.A., f/k/a | ) | |
| FIRST NATIONAL BANK, CONWAY SPRINGS, KS | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Adversary No. 06-5018 |
| | ) | |
| JANEE M. PHILLIPS, a/k/a JANEE M. COMLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Before the Court is Conway Bank's complaint to except from discharge a judgment it

-1-

obtained against defendant Janee Phillips on January 21, 2003. The judgment arose from Ms. Phillips' default on a loan from Conway Bank of some $233,000, the repayment of which was secured by an assignment of her interest in a domestic relations award in her just completed divorce and a purchase money security interest in furniture and appliances for her home. Relying on 11 U.S.C. § 523(a)(6), the Bank alleges that Ms. Phillips willfully and maliciously injured its property interests by selling the furniture and appliances without the Bank's permission and without accounting to the Bank for any proceeds. Trial on the Bank's complaint was held June 21, 2007. The plaintiff Conway Bank appeared by Richard K. Thompson of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P. Ms. Phillips appeared *pro se*.

Procedural Concerns

The Court has jurisdiction of this core proceeding.[1] There are, however, procedural complications. On the eve of trial, the Bank purportedly assigned its judgment for value to Mid America Auto Auction, Inc. ("MAAA"). MAAA is a corporation principally owned or controlled by Bill Phillips, debtor's former husband. The Court was not provided with the written assignment of the judgment, but did receive into evidence a notice of assignment of judgment dated June 19, 2007 filed in Sedgwick County District Court and executed by Conway Bank's former counsel Douglas Pfalzgraf.[2] According to the docket in this proceeding, the law firm of Martin, Pringle, Oliver, Wallace & Bauer entered its appearance for Conway Bank on June 15, 2007[3] and on June

---

[1] 28 U.S.C. § 157(b)(1) and (b)(2)(I); 28 U.S.C. § 1334(b).

[2] Ex. 3.

[3] Dkt. 47.

19, Pfalzgraf moved to withdraw as counsel for the Bank in this proceeding.[4] At trial, plaintiff's counsel asserted that he was acting as Conway Bank's counsel to enforce the judgment and prosecute this complaint.

Fed. R. Civ. P. 17(a) requires that every action be prosecuted in the name of the real party in interest. This rule applies to adversary proceedings under Fed. R. Bankr. P. 7017. MAAA has not sought to substitute itself as plaintiff in this case and it appears from counsel's comments that the parties to the assignment intended the Bank to prosecute the adversary proceeding, but that MAAA would benefit from whatever its outcome might be. The actual assignment itself was not placed in evidence and plaintiff's counsel could not address its contents. The representations in the Notice of Assignment that MAAA took the assignment, combined with counsel's assertion that the Bank retained an interest in it, raise a serious question as to the identity of the real party in interest.

On the other hand, the substitution rule – Fed. R. Civ. P. 25(c) – made applicable to adversary proceedings by Fed. R. Bankr. P. 7025, permits the Bank to prosecute the adversary proceeding notwithstanding its assignment of the judgment to MAAA. That rule states:

> In case of any transfer of interest, the action *may be continued by* or against *the original party*, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

The Bank's assignment of the judgment to MAAA would appear to be a transfer of the Bank's interest in the judgment as a judgment creditor.[5] No motion has been made to substitute MAAA for

---

[4] Dkt. 48.

[5] Under Kansas law, the successor to whom an interest in a judgment has passed by assignment may be substituted for the original judgment creditor and collect or enforce the judgment in its own name. *See* KAN. STAT. ANN. § 60-2405 (2005). The purpose of this statute is to give the assignee the means to enforce the judgment to which it succeeded. *Nelson v. Boula*, 207 Kan. 771, 486 P.2d 1340 (1971).

-3-

the Bank in this proceeding. The Court concludes that Rule 25(c) allows the Bank to continue the prosecution of its nondischargeability complaint against Phillips.[6]

Moreover, Rule 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed *after objection* for . . . substitution of, the real party in interest; and such . . . substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Here, where no objection has been lodged by Ms. Phillips to the Bank's continued prosecution of the adversary complaint and the proceeding is easily resolved on the merits, this procedural issue is essentially moot. To be clear, however, the Court intends that its decision today binds both the Bank and MAAA.[7]

Facts

Janee Phillips filed her voluntary chapter 7 petition on October 15, 2005. Her case was noticed as a no asset case and therefore, no proofs of claim were filed by her creditors.

Ms. Phillips testified that her relationship with the Bank started in 1999, after her divorce became final. Ms. Phillips dealt with the Bank's loan officer and current president, Bob Wall. She

---

[6] *See First Federal Sav. & Loan Ass'n of Coffeyville v. Moulds*, 202 Kan. 557, 451 P.2d 215 (1969) (applying the state law counterpart to Fed. R. Civ. P. 25(c), K.S.A. 60-225(c) and permitting action to proceed against initial holder of judgment without joinder or substitution of the assignee of the judgment.)

[7] The purpose of the real party in interest requirement is to protect the defendant from a multiplicity of suits for the same cause of action. *See O'Donnell v. Fletcher*, 9 Kan. App. 2d 491, 681 P.2d 1074 (1984). The trial court should not raise the real party in interest issue sua sponte. *Id. See also, Hefley v. Jones,* 687 F.2d 1383 (10th Cir. 1982) (real party in interest objection is for the benefit of the defendant and may be waived if not raised in timely fashion). By allowing the Bank to proceed with its nondischargeability complaint despite having assigned its judgment, MAAA will be foreclosed from later pursuing such a claim and enforcing the judgment.

-4-

admitted making the promissory note upon which the judgment is based. The note was dated June 21, 2000 and was in the amount of $230,000. It was a six month note calling for interest only payments for six months and a balloon payment on December 21, 2000. The security agreement was dated November 17, 1999 and granted a purchase money security interest in furniture and appliances and a security interest in Ms. Phillips' interest in her divorce settlement. Ms. Phillips further understood that she was to supply the Bank with invoices for the furniture she purchased. The Bank advanced loan proceeds as Ms. Phillips presented the invoices. She states that the Bank did not explain the security agreement to her and that she did not understand that she could not sell the furniture without notifying the Bank.

According to Bob Wall, Ms. Phillips remained current on the obligation until sometime in 2002, at which time she fell into default, triggering the civil action that produced the judgment in question. According to Ms. Phillips, she defaulted on the Bank note when her ex-husband stopped making alimony payments. The Bank took a stipulated judgment on January 21, 2003. At that time, Ms. Phillips had moved from Wichita to Colorado Springs to take a job with another auto auction. It is apparent that she made numerous payments on the note, either from the proceeds of her domestic court award or from other sources, because the remaining principal balance on the note is $58,451.[8] Wall stated that the Bank's part-owner, the late Rusty Eck (a local car dealer), also made payments on Ms. Phillips' obligations to the Bank, some of which he guaranteed. He did not guaranty this particular note and it is unclear to the Court whether he made any payments on this

---

[8] The Court received no evidence from the parties concerning the amount Ms. Phillips received under the domestic court award that secured the loan obligation. According to Schedule B in Ms. Phillips' bankruptcy filing, she was awarded alimony of $50,000. She scheduled the Bank's claim of $80,000 in Schedule D and at $100,000 in Schedule F.

-5-

obligation. When Phillips stopped paying the note, the Bank foreclosed by commencing a state court action on October 8, 2002, obtaining the judgment described above and authorizing it to recover and sell the furniture and other collateral. Wall did not have any further communications with Phillips after the judgment was taken.

In March of 2004, Ms. Phillips lost her job in Colorado Springs. During 2004, she became financially strapped and resorted to selling her furnishings for money to live on. She could only remember receiving $2,000 from a consignment company, but is otherwise unable to account for the proceeds or whereabouts of her furniture. She testified that she was in great emotional distress at this time. Her sister testified that Ms. Phillips was continually harassed by her ex-husband, Mr. Phillips, now the putative owner of this judgment. She did not communicate with Wall about the sales. She also states that she did not know that the security agreement prohibited the sale of the property without the Bank's permission. She was aware a judgment had been entered. Wall could not say whether the Bank undertook any specific effort to recover its collateral after obtaining the judgment or execute upon the judgment. He did not recall any effort beyond attempting to locate the furniture through informal inquiry.

The Court concludes that Ms. Phillips had and has no animosity toward the Bank or Mr. Wall. Her testimony that she did not understand her obligations regarding the furniture, if indeed she had any, is credible. While Ms. Phillips was involved in the car business, plaintiff developed no evidence concerning what she did or what her expertise was.

Analysis

To except this debt from discharge under 11 U.S.C. § 523(a)(6), the Bank had the burden to prove by a preponderance of the evidence that Ms. Phillips wilfully and maliciously injured the

Bank's property interests.[9] In the context of sold collateral, *Collier's* suggests that such proof requires a showing that the debtor (1) knew of the security interest; (2) knew that the transfer was wrongful as to the creditor; and (3) knew that the transfer would cause financial harm to the creditor.[10] The Bank proved that the debtor knew of the security interest that is now merged in the judgment. It did not prove that she knew the transfer was wrongful as to the creditor or that she knew it would cause financial harm. There is no proof that she intended to harm the Bank. Indeed, the debtor credibly testified that she was out of a job, without an income, and liquidated the furniture to pay daily living expenses. Moreover, it appears that the Bank expected to receive repayment of its loan largely from the alimony judgment and not necessarily the furniture. The Court observes that used furniture, no matter how expensive when new, is unlikely to yield much at liquidation sale and is therefore not as useful collateral as the assignment of an alimony judgment.

As the Supreme Court outlined in *Kawaauhau v. Geiger*, excepting a debt from discharge under § 523(a)(6) requires a showing that the debtor inflicted an intentional injury as opposed to committing an intentional act that resulted in an injury.[11] That did not occur here. While the debtor may have breached a contractual obligation not to sell the furniture or may even have converted the furniture, there simply is not sufficient evidence in the record to show that she intended to injure the Bank's interests. As stated in *Collier's* treatise:

---

[9] *In re Longley,* 235 B.R. 651, 655 (10th Cir. BAP 1999); *In re Diel*, 277 B.R. 778, 783 (Bankr. D. Kan. 2002).

[10] 4 *Collier on Bankruptcy* ¶ 523.12[3] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2006).

[11] 523 U.S. 57, 61, 118 S. Ct. 974, 140 L.Ed. 2d 90 (1998). *See also Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) (A § 523(a)(6) exception to discharge can be sustained only where there is proof of both a willful act and a malicious injury).

Case 06-05018    Doc# 56    Filed 07/17/07    Page 7 of 8

Transfers in breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain to cause financial harm. Unless the creditor can prove not only that the debtor knew of the security interest, but also that the debtor knew that a transfer of the property was wrongful and certain to cause financial harm to the creditor, the debt should not be found nondischargeable. Courts must be careful not to equate a breach of a contract, which happens to be a security agreement, with conduct causing willful and malicious injury.[12]

In the absence of corroborating evidence demonstrating a malicious injury, judgment must be entered for the defendant. Defendant's debt to Conway Bank and to MAAA, as assignee of the judgment, should be discharged.. A Judgment on Decision will issue this day.

# # #

---

[12] 4 *Collier on Bankruptcy* ¶ 523.12[3] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2006). *See also, In re Diel, supra* (Willful and malicious injury debt dischargeability exception generally relates to tort, and not to contract, claims.).

-8-